Wilde, J.
The principal question in these cases is, in what manner the flats claimed by the parties are to be divided.
The only other question is, whether the tenants have obtained a valid title to any part of the flats, claimed by the demandants, by disseisin.
It is admitted by the demandant in the first two actions, that his grantors, the demandants in the two last actions, were disseized of a small part of the flats demanded, at the time of their conveyance to him; and consequently, that he is not entitled to recover the same in his own name. But it appears by the facts agreed, that the demandants in the two last actions have not been barred by the disseisin,* and are therefore entitled to recover that part of the flats, if by a just division it appertains to that lot.
To determine this question, a rule is to be established, wher.eby all the flats within the cove, where the flats in question are situate, may be divided amongst the coterminous proprietors.
*12 The question depends upon the construction to be given to the colony ordinance of 1641, by the third section of which it is provided, that “ In all creeks, coves, and other places where the sea ebbs and flows, the proprietor of the land adjoining shall have propriety to low-water mark, where the sea doth not ebb above a hundred rods, and not more wheresoever it ebbs further.”
No provision is made as to the location of the flats appurtenant to the upland, or how a division is to be made among coterminous proprietors; and no rule can be laid down which will be applicable to all cases. We have no doubt, however, that in all cases, it was intended, if practicable, to give to every proprietor the flats in front of his upland of equal width with his lot at high-water mark.
But this in many cases has been found impracticable. So was the fact in the leading case of Rust v. Boston Mill Corporation, 6 Pick. 158. In that case the flats to be divided were within a deep cove, the mouth of which was narrow, so that it was impossible to make the division among the several proprietors by parallel lines ; and from necessity the division was made by running converging divisional lines from high-water mark to the mouth of the cove, the low-water mark being without the cove. And this rule of necessity has been followed in many other cases.
So if a division were to be made of flats surrounding a headland, it would be impracticable to make a just division by parallel lines; and to give to each proprietor his due proportion of the flats, the lines of division must diverge from high-water to low-water mark.
But these are exceptions to the general rule, which we think was intended, although not expressly declared, by the ordinance ; namely, that in all cases, when practicable, every proprietor is entitled to the flats in front of his upland of the same width at low-water mark as they are at high-water mark. And so the division was made in Valentine v. Piper, 22 Pick. 85, which cannot be distinguished in principle from the present case. That was a case in which it was necessary to lay down a rule, as to the division of flats within a part of a cove *13 between Summer street and Wheeler’s point. The north line was determined by the verdict of the jury. And it was decided that the flats between Summer street and Wheeler’s point should be divided by parallel lines amongst the proprietors, leaving the flats around the point to be divided by diverging lines.
By the plan, which is made a part of the case, it will appear, that upon the same principle, the division of the flats within the cove in this case* should be made by parallel lines, which will give to each proprietor his full width of flats throughout as his lot measures at high-water mark; and that such a division will not encroach upon the rights of any other proprietors.
The division is to be made by running a base line across the mouth of the cove, and the whole flats within the cove are to be divided among the proprietors, by parallel lines, at right angles with the base line. These parallel lines, if extended to low water, or to the distance of a hundred rods from the upland, as the case may be, cannot interfere with the rights of proprietors of the adjacent lots. On each side of the cove there is a headland, the proprietors of which are entitled to have a division of their flats by diverging lines, giving to each proprietor a greater width of flats at low water than at high water. They, therefore, can have no cause to complain of the division.
And we think that the proprietors of lands fronting on the cove have no just cause of complaint, for they obtain their full shares of the flats intended to be allowed by the ordinance. A just division is made of all the flats within the cove, and there seems to be no good reason why the divisional lines should not be extended in the same direction to low-water mark, or to the distance of a hundred rods from the upland.
We are aware of the role laid down by the learned court in the state of Maine, in the case of Emerson v. Taylor, 9 Greenl. 42 † But, in none of the cases which we have- been *14 called upon to consider, have we found that rule practicable, for want of a full survey of all the connected flats in and about Boston. No such survey has ever been made, and probably never will be, as the expense of such a- survey would be very great. The rule we have adopted, therefore, is the only just rule by which these cases can be decided.

Judgments in the several cases are to be entered accordingly for the demandants.

 See St. 1786, c. 13; Rev. Sts. c. 119, § 11.

 See the accompanying map.

 The following is the marginal note in this case, in which the role adopted in Maine is stated: —
“ The mode of ascertaining the side lines of water lots, from the upland to low *14 watei mark, under the colonial ordinance of 1641, where they have not been otherwise settled by the parties, is, to draw a base line from one corner of each lot to the other, at the margin of the upland, and run a line from each of these corners at right angles with such base line, to low-water mark. If the line of the shore is straight, the side lines of the lots, thus drawn to low-water mark, will be «identical; but if by reason of the curvature of the shores, they either diverge from, or conflict with, each other, the land inclosed by both lines, or excluded, as the case may be, ia to be equally divided between the adjoining proprietors.”